**[Cite as *State v. Fields*, 2020-Ohio-5538.]**

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-19 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-826 |
| | : | |
| MALCOLM FIELDS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020 and CATHERINE BREAULT, Atty. Reg. No. 0098433, 130 West Second Street, Suite 2150, Dayton, Ohio 45402
      Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Malcolm Fields appeals his conviction for operating a vehicle while under the influence of alcohol or drugs (OVI), in violation of R.C. 4511.19(A)(2)(b) (three or more prior offenses), a felony of the fourth degree. Fields filed a timely notice of appeal on April 16, 2020.

{¶ 2} The incident which formed the basis for Fields's conviction occurred in the early morning hours of October 20, 2019, when Officer James Johnson was patrolling in the area of Limestone Street in Springfield, Ohio, and he observed a black Honda Civic parked in the road, not moving. Officer Johnson testified that he pulled up alongside the vehicle and observed a male, later identified as Fields, sitting in the driver's seat with his head down. After approximately one minute, the driver of the vehicle woke up and started driving northbound on Limestone Street. Officer Johnson followed the vehicle.

{¶ 3} Shortly thereafter, Officer Johnson observed Fields run a red light as he turned from Limestone Street onto Leffels Lane. Johnson testified that Fields quickly turned into the parking lot of a BP gas station located at the corner of South Limestone Street and Leffels Lane without using a turn signal. Fields then pulled the vehicle up to a gas pump. At this point, Officer Johnson activated his overhead lights and initiated a traffic stop.

{¶ 4} As soon as the Civic came to a stop next to the gas pump, Fields opened the driver's side door of the vehicle. Officer Johnson testified that he instructed Fields to close the door, but Fields refused, asking in a loud voice why he was being stopped. Officer Johnson requested backup and, after a short time, Officer Justin Lowe arrived at the scene. Once Officer Lowe arrived, he and Officer Johnson approached the Civic and observed Fields slumped over in the driver's seat. Officer Johnson testified that he made

contact with Fields and requested his driver's license. Fields refused. Johnson then requested Fields's name and date of birth but, again, Fields refused the request.

{¶ 5} While interacting with Fields, Officer Johnson observed that his eyes were glassy and bloodshot. Johnson also noticed that Fields smelled strongly of alcohol and that Fields's speech was slurred. Officer Johnson testified that, based upon his experience and training, he believed that Fields was intoxicated.

{¶ 6} At this point, Fields was advised that he was under arrest, and he was ordered to exit the vehicle. Officer Johnson testified that he initially intended to arrest Fields on a charge of obstruction. Fields refused to exit the vehicle, and Officer Lowe testified that he observed Fields attempt to reach under the driver's seat of the vehicle. Officer Johnson testified that, at this point, he and Officer Lowe had to forcibly remove Fields from the vehicle. As the officers tried to place him in the rear of a cruiser, they noticed that Fields was unstable on his feet and very aggressive. Johnson testified that he again noticed the strong odor of alcohol emanating from Fields while Fields was yelling at the officers prior to being placed in the cruiser. Immediately after placing Fields in the cruiser, Officer Johnson informed him of his *Miranda* rights. We note that, during cross-examination, Johnson testified that it was only after Fields was under arrest that he noticed the strong odor of alcohol coming from Fields. Officer Johnson, who is an African-American, testified that Fields referred to him using racial slurs.

{¶ 7} After being transported to the Clark County Jail, Fields refused to provide a breath sample or to comply with any other testing. Additionally, Fields refused to sign the BMV 2255 form (related to chemical testing) after being read the form by the officers.

{¶ 8} On December 16, 2019, Fields was charged with two counts of OVI. Fields

was arraigned on January 3, 2020, and the trial court released him on his own recognizance. On January 30, 2020, Fields filed a motion to suppress, and the trial court scheduled a hearing on the motion on February 14, 2020. Before the hearing was held, however, Fields withdrew his motion to suppress.

{¶ 9} The case proceeded to a jury trial on February 26, 2020. Fields was found guilty of the charged offenses, and the trial court ordered a presentence investigation report (PSI). On March 16, 2020, the trial court merged the two OVI counts[1] and ordered Fields to serve 120 days in prison in addition to another 30 months of incarceration pursuant to the repeat offender provisions of R.C. 4511.19(G)(1)(d)(i). After sentencing, Fields filed motions to the stay his sentence pending the outcome of his appeal with the trial court and with this Court; both motions were denied.

{¶ 10} Fields now appeals from his conviction.

{¶ 11} Fields's first assignment of error is as follows:

MR. FIELDS WAS DENIED HIS RIGHT TO A FAIR TRIAL BY TRIAL COUNSEL'S WITHDRAWAL OF DEFENDANT'S MOTION TO SUPPRESS.

{¶ 12} In his first assignment, Fields contends that he received ineffective assistance of counsel when his trial attorney withdrew his motion to suppress from consideration by the trial court prior to the scheduled hearing on that motion.

{¶ 13} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

---

[1] The State elected to proceed to sentencing on Count II of the indictment, a violation of R.C. 4511.19(A)(2)(b).

2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. "To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Citation omitted.) *State v. Mitchell,* 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 14} A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland* at 688. A reviewing court may not second-guess decisions of counsel which can be considered matters of strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 15} In *State v. Caldwell,* 2d Dist. Greene No. 2013-CA-76, 2015-Ohio-2551, we

stated the following:

> " '[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel.' " *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Likewise, withdrawal of a motion to suppress does not "constitute per se ineffective assistance of counsel." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 14, citing *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.
>
> "Instead, the decision to withdraw a motion to suppress 'constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful.' " *Id.*, quoting *Dominguez* at ¶ 20, which in turn, cites *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996). *Accord State v. Spencer*, 10th Dist. Franklin No. 03AP-579, 2004-Ohio-4102, ¶ 23. "Filing a motion to suppress is not without risks, and the fact that counsel filed a motion for leave to file the motion to suppress, and later withdrew that motion, is compelling evidence of a tactical decision." *Madrigal* at 389.

*Caldwell* at ¶ 43-44.

**{¶ 16}** The record in this case is devoid of any evidence indicating that Fields's motion to suppress would have succeeded. Fields initially argues that his motion to suppress would have been successful because the officers had no lawful cause to detain him. However, the record establishes that Officer Johnson had a reasonable suspicion

that Fields was intoxicated because of his slurred speech, the strong odor of alcohol emanating from him, and his bloodshot, glassy eyes. Furthermore, the record establishes that Fields completely refused to cooperate with the officers, and when told to exit the vehicle, he "furtively" attempted to reach under the seat. Based upon the foregoing, the officers had ample reason to lawfully detain Fields.

{¶ 17} Fields also argues that his motion to suppress would have been successful because the officers failed to properly administer field sobriety tests. This argument fails because the record establishes that Fields refused to participate in any tests and had to be forcibly removed from the vehicle and placed in the rear of a police cruiser. Fields also argues that any statements he made to the police were obtained unconstitutionally, but the record establishes that Officer Johnson informed Fields of his *Miranda* rights immediately after he was arrested and placed in the rear of the cruiser.

{¶ 18} Fields further argues that his arrest for obstruction was without probable cause. Officer Johnson testified that he initially sought to arrest Fields for obstruction, but Fields was ultimately arrested for OVI after he was forcibly removed from the vehicle, based upon the officer's observations and Fields's conduct and overall demeanor. More importantly, Fields did not raise this argument in his motion to suppress before the trial court.

{¶ 19} Lastly, Fields argues that the motion to suppress would have been successful because the police did not have probable cause to arrest him for OVI. "Probable cause" supporting an arrest exists where the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to cause a person of reasonable caution to believe that an offense

has been or is being committed. *State v. Davis*, 2017-Ohio-5613, 94 N.E.3d 194, ¶ 43 (2d Dist.), citing *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

{¶ 20} As previously discussed, the officers pointed to a significant number of factors that indicated to them that Fields was intoxicated; specifically, he was slumped over in the vehicle, his speech was slurred, there was a strong odor of alcohol emanating from him, and he had bloodshot, glassy eyes. Furthermore, Fields completely refused to cooperate with the officers and was unstable on his feet when they moved him to the police cruiser.

{¶ 21} The record in the case before us is devoid of any evidence indicating that Fields's motion to suppress would have succeeded. Therefore, we cannot find that his trial counsel was ineffective for withdrawing the motion to suppress in what could very well have been a tactical decision.

{¶ 22} Fields's first assignment of error is overruled.

{¶ 23} Fields's second assignment of error is as follows:

THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶ 24} In his second assignment, Fields argues that his conviction for OVI was against the manifest weight of the evidence and that the State failed to adduce sufficient

evidence to support his conviction of that offense.

{¶ 25} This Court has previously noted:

When a conviction is challenged as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In a manifest-weight analysis, the credibility of the witnesses and the weight to be given to their testimony are primarily for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 477684, *5 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL

691510 (Oct. 24, 1997). * * *

*State v. Nelson*, 2d Dist. Greene No. 2014-CA-7, 2015-Ohio-113, ¶ 29.

{¶ 26} Regarding the sufficiency of the evidence, this Court has previously stated:

"A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkin*s, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, "the relevant inquiry is whether any rational finder of fact, after viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A guilty verdict will not be disturbed on appeal unless, "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

*State v. Wilson*, 2d Dist. Montgomery No. 27001, 2016-Ohio-7329, ¶ 6.

{¶ 27} R.C. 4511.19(A)(1)(a) states that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(2)(b) further provides that a person who has been previously convicted of OVI within 20 years shall not operate a vehicle under the influence of alcohol or drugs and shall not, upon being asked by a law enforcement officer to submit to a chemical test or

tests and being advised by the officer of the consequences of refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶ 28} Accordingly, to establish the violation of R.C. 4511.19(A)(2)(b), the State was required to prove (in addition to the prior conviction) that Fields had operated a vehicle under the influence of drugs or alcohol and that he had refused to submit to a chemical test. Here, Fields argues that that his OVI convictions were against the manifest weight of the evidence and not supported by sufficient evidence because no field sobriety tests were performed and no breathalyzer test was administered. Fields also argues that Officer Johnson's trial testimony was not credible and was inconsistent with his police report. Finally, Fields argues that, because the video of Officer Johnson's cruiser camera did not have audio, there was insufficient evidence that his speech was slurred or that he was yelling and otherwise acting in a drunken manner.

{¶ 29} Officer Johnson testified that he observed a black Honda Civic parked in the road, not moving; Johnson pulled alongside the vehicle and observed Fields in the driver's seat with his head down. After following him for a short time, Officer Johnson observed Fields run a red light. Johnson also testified that Fields quickly turned into the parking lot of a gas station without using a turn signal and pulled the vehicle up to a gas pump. At this point, Officer Johnson activated his overhead lights and initiated a traffic stop.

{¶ 30} As soon as the Civic came to a stop next to the gas pump, Fields opened the driver's side door of the vehicle. Officer Johnson testified that he instructed Fields to close the door, but Fields refused, asking in a loud voice why he was being stopped. Johnson requested backup, and Officer Lowe arrived at the scene soon thereafter. Once

Officer Lowe arrived, he and Officer Johnson approached the Civic and observed Fields slumped over in the driver's seat. Officer Johnson then asked for a driver's license and other identifying information, which Fields refused to give.

{¶ 31} While interacting with Fields, Officer Johnson observed that his eyes were glassy and bloodshot. Johnson also noticed that Fields smelled strongly of alcohol and his speech was slurred. Officer Johnson testified that, based upon his experience and training, he believed that Fields was intoxicated. At this point, Fields was advised that he was under arrest and was ordered to exit the vehicle, which he refused do. Officer Lowe testified that he observed Fields attempt to reach under the driver's seat of the vehicle. Officer Johnson testified that, at this point, he and Officer Lowe had to forcibly remove Fields from the vehicle. As the officers placed him in the rear of a cruiser, they noticed that Fields was unstable on his feet and very aggressive. Officer Johnson testified that he again noticed the strong odor of alcohol emanating from Fields while Fields was yelling at the officers prior to being placed in the cruiser. Finally, upon being transported to the Clark County Jail, Fields refused to submit a breath sample or comply with any other testing and refused to sign the BMV 2255 form (related to chemical testing) after being read the form by the officers. In other words, two police officers testified to numerous physical and behavioral indications of intoxication, including the odor of an alcoholic beverage, slurred speech, bloodshot and glassy eyes, argumentativeness, and unsteady gait. The jury "as finder of fact, may believe all, part, or none of a witness's testimony,' " and it was entitled to believe the officers' testimony. *State v. Flores-Lopez*, 2017-Ohio-690, 85 N.E.3d 534, ¶ 63 (2d Dist.).

{¶ 32} For the foregoing reasons, we conclude that a rational finder of fact, after

viewing the evidence in a light most favorable to the State, could have found that Fields was guilty of OVI. Additionally, having reviewed the entire record, we cannot conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice. The jury clearly credited the testimony of the State's witnesses, and we defer to its assessment of credibility. Therefore, we conclude that Fields's convictions were not against the manifest weight of the evidence and were supported by sufficient evidence.

{¶ 33} Fields's second assignment of error is overruled.

{¶ 34} Fields's third and final assignment of error is as follows:

THE JUDGEMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE RECORD DOES NOT CLEARLY AND CONVINCINGLY SUPPORT THE APPELLANT'S SENTENCE.

{¶ 35} In his final assignment, Fields contends that the sentence imposed by the trial court was not clearly and convincingly supported by the record. We disagree.

{¶ 36} As this Court has noted:

When reviewing felony sentences, appellate courts apply the standard of review found in R.C. 2953.08(G)(2), not an abuse of discretion standard. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

"The trial court has full discretion to impose any sentence within the

authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum * * * sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. * * * R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense, whereas R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. Similarly, R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding an offender being more or less likely to commit future crimes.

Although statutory maximum sentences do not require any of the findings specified in R.C. 2953.08(G)(2), the Ohio Supreme Court has found it appropriate "for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23.

*State v. Roberts*, 2d Dist. Montgomery No. 2018-CA-27, 2019-Ohio-49, ¶ 6-8.

{¶ 37} R.C. 4511.19(G)(1)(d)(i) applies to offenders who have prior OVI offenses. It authorizes the trial court to impose an additional definite prison term of six to 30 months and/or community control, on top of any mandatory prison sentence; the mandatory sentence is either 60 days or 120 days in prison for a fourth-degree felony offense based on three or four prior convictions within six years or one to five years for a fourth-degree felony offense based on five or more prior convictions within 20 years. The specific statutory language of R.C. 4511.19(G)(1)(d)(i) states in pertinent part:

> If the court imposes a mandatory prison term, notwithstanding division (A)(4) of section 2929.14 of the Revised Code, it also may sentence the offender to a definite prison term that shall be not less than six months and not more than thirty months and the prison terms shall be imposed as described in division (G)(2) of section 2929.13 of the Revised Code. * * *

{¶ 38} Fields does not argue that his sentence is contrary to law. Rather, he argues that the record does not support the sentence imposed by the trial court. As previously stated, Fields was ordered to serve 120 days in prison in addition to another 30 months of incarceration.

{¶ 39} Initially, we note that this case represents Fields's fifth OVI conviction since 2010. Fields contends that this is his first felony conviction, however his PSI indicated that he was convicted of possession of drugs in Clark C.P. No. 05-CR-0577 and received two years of community control, a $2,000 fine, and a six-month driver's license suspension. The court's docket and the fine of $2,000 in that case indicate that it was indeed a felony conviction. (Pursuant to R.C. 2929.28(A)(2)(a)(i), the maximum fine for

a misdemeanor of the first degree is $1,000.)

{¶ 40} Finally, it is clear from the record before us that the trial court crafted Fields's sentence based upon his PSI and the pertinent statutory factors, namely those enumerated in R.C. 2929.11 and 2929.12. While it did not express its reasoning on the record at the sentencing hearing, the trial court stated its reasoning in the judgment entry:

> In *State v. Miller*, 2d Dist. Clark No. 09CA28, 2010-Ohio-2138, at ¶ 43, we held that a sentence is not improper merely because the trial court does not mention either R.C. 2929.11 or 2929.12 at the sentencing hearing. We noted that the trial court, in its journal entry, stated that it had considered "the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and [had] balanced the seriousness and recidivism factors [under] Ohio Revised Code Section 2929.12." *Id*. We further stated that "[b]ecause a trial court speaks only through its journal entries, [a] sentence is not contrary to law merely because the trial court failed to cite either statute during the sentencing hearing." *Id*., citing *State v. Cave*, 2d Dist. Clark No. 09-CA-6, 2010-Ohio-1237, ¶ 10. "Furthermore, even if there is no specific mention of those statutes in the record, 'it is presumed that the trial court gave proper consideration to those statutes.' " *Id*., quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at n .4.

*State v. Yarbrough*, 2d Dist. Clark No. 2014-CA-67, 2015-Ohio-1672, ¶ 9.

{¶ 41} It is within the discretion of the individual judge "to determine the weight to

assign a particular statutory factor." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). When making such judgments, the sentencing court "is not required to divorce itself from all personal experiences and make [its] decision in a vacuum." *Id.* at 215-216, quoting *State v. Cook*, 65 Ohio St.3d 516, 529, 605 N.E.2d 70 (1992). In this case, the trial court considered the statutory factors in R.C. 2929.11 and R.C. 2929.12, and the individual sentences were within the statutory ranges for those offenses. Additionally, pursuant to R.C. 2929.12(A), a trial court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing" set forth in R.C. 2929.11. Therefore, we find that the trial court's rationale for sentencing Fields to 120 days in prison in addition to another 30 months of incarceration was not clearly and convincingly unsupported by the record.

{¶ 42} Fields's third assignment of error is overruled.

{¶ 43} All of Fields's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

John M. Lintz
Jon Paul Rion
Catherine Breault
Hon. Douglas M. Rastatter