[Cite as *State v. Gatewood*, 2022-Ohio-2513.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-20 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-681A |
| | : | |
| ELIJAH GATEWOOD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of July, 2022.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
  Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, P.O. Box 574, Dayton, Ohio 45409
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Elijah Gatewood appeals from his conviction, following a guilty plea, of one count of felonious assault. Gatewood's appeal follows our setting aside of a brief filed pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because we found issues with arguable merit for appeal. The trial court failed to orally advise Gatewood of all of the R.C. 2929.19(B)(2)(c) notifications at the sentencing hearing; therefore, the matter is remanded for the sole purpose of resentencing Gatewood. In all other respects, the trial court's judgment is affirmed.

{¶ 2} On December 8, 2020, Gatewood was indicted on four counts of felonious assault and two counts of discharge of a firearm on or near prohibited premises. Count 1, the first felonious assault offense, also contained a firearm specification. Gatewood pled not guilty on December 11, 2020.

{¶ 3} The parties entered into a plea agreement on February 23, 2021. The State represented to the court that in exchange for a guilty plea to Count 1, it would dismiss the attendant firearm specification and the remaining charges. The following exchange occurred at the plea hearing:

> [THE PROSECUTOR]: The facts that Mr. Gatewood would be pleading guilty to are that on or about November 8, 2020, Clark County, Ohio, * * * [there] was an interaction between two other individuals, an individual who was Mr. Gatewood's co-defendant and a Nathan Neer. Those two individuals, and it's not a part of this, were conducting a narcotics transaction.

Mr. Neer, the victim in this case, is then believed to try to steal or leave the scene without completing the transaction * * *. At that time Mr. Gatewood and the co-defendant did use a firearm to cause physical harm, that being the shooting of Nathan Neer, Your Honor.

THE COURT: So both Defendants Green and Gatewood had a firearm and both fired shots at victims?

[THE PROSECUTOR]: Correct, Your Honor. That's my understanding.

* * *

THE COURT: * * * Was the prosecutor's statement of the plea agreement accurate?

[DEFENSE COUNSEL]: Yes.

THE COURT: Do you understand the terms of the agreement, Mr. Gatewood?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is that what you want to do this morning?

THE DEFENDANT: Yes, Your Honor.

* * *

THE COURT: Do you understand the nature of the case and the facts placed on record by the prosecutor?

THE DEFENDANT: Yes, Your Honor.

* * *

**{¶ 4}** The court then explained to Gatewood that felonious assault was a felony of the second degree with a maximum penalty of an indefinite sentence of eight to 12 years in the Ohio State Penitentiary and a $15,000 fine, and that the court would have the option of placing him on community control, the conditions of which could include time in the county jail, fines, and restitution. The court also explained that if Gatewood were sentenced to prison, the court could set his sentence "anywhere between two and eight years," which would become an indefinite sentencing by adding 50% to that number, with the presumption that he would be released after the lower term of incarceration; however, the presumption could be overcome if certain factors were established by the department of rehabilitation and corrections. Additionally, if he were sentenced to prison, then upon his release, he would be placed on a mandatory three years of post-release control. Gatewood indicated that he understood all of these explanations.

**{¶ 5}** The court further advised Gatewood of the consequences of violating post release control and advised him of the constitutional rights he was waiving by entering a guilty plea. The court found that Gatewood entered his plea knowingly, voluntarily, and intelligently. It dismissed the gun specification and remaining counts pursuant to the plea agreement whereby Gatewood pled guilty to one count of felonious assault.

**{¶ 6}** The sentencing hearing occurred on March 16, 2021. Gatewood's attorney asked the court to impose community control sanctions. The following exchange then occurred:

> THE COURT: * * * It's my understanding the victim was shot with a nine millimeter; is that correct?

[THE PROSECUTOR]:   That is correct, your Honor.

THE COURT:   That is the gun the co-defendant was using?

[THE PROSECUTOR]:   That is correct, your Honor.

THE COURT:   This defendant had in his possession a .22?

[THE PROSECUTOR]:   That is what we found out.

THE COURT:   I read in the police report there were eleven .22 caliber casings found at the scene?

[THE PROSECUTOR]:   Correct, your Honor.

THE COURT:   And then, also, it's my understanding that as these victims were trying to flee from the gas station, this defendant and his co-defendant were following them in a car, apparently, got alongside of them enough to fire.   I believe the co-defendant maybe fired some shots into the car; is that correct?

[THE PROSECUTOR]:   That is our understanding from what Mandy Likens tells us, yes.

THE COURT:   It's my understanding that this defendant was the one driving this car?

[THE PROSECUTOR]:   That is correct.

THE COURT:   So that doesn't make you just there, Mr. Gatewood, doing nothing.   It sounds like you fired multiple shots because there's 11 casings - - eleven .22 casings at the scene.   And as the victims were trying to flee from the gas station, you could have drove the other way and,

instead, you drove and got right up alongside of that car so that your co-defendant could fire shots.

I know you said you were just driving home, but I don't believe that. You were pursuing these people and you were the driver and you were setting up this co-defendant so he could fire more shots. And that's not just being there not doing anything. That's being actively involved in this shooting.

You should be thankful that this victim didn't die. He got shot in the head. If he had died, you would have been - - even though you weren't the one that fired the shot, perhaps, that hit him in the head, you would have been charged and convicted of felony murder. That's 15 to life. I mean, no questions asked. That's just what it is.

I do believe the prosecutor took into account a lot of mitigating factors here by dismissing the gun specification, which would have been a mandatory three years right before you even got sentenced on the felonious assault, dismissed other counts.

I have a responsibility to protect the community. A guy was shot. You don't get a free pass for that. I don't care what your prior record is or isn't.

**{¶ 7}** The court then sentenced Gatewood to seven to ten and a half years in prison, with a mandatory three years of post-release control upon his release, and credit for time served.

**{¶ 8}** The trial court's judgment entry of conviction stated, in pertinent part:

B.   Findings

The Court considered the PSI, the defendant's sentencing memorandum, record, oral statements of counsel, the defendant's statement, numerous letters from family and friends of the victims, several letters in support of the defendant, and the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and then balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12.

The Court finds that felonious assault is a qualifying offense pursuant to Ohio Revised Code Section 2929.144(A) because it is a felony of the second degree that was committed on or after March 22, 2019.

Since the defendant is being sentenced for one qualifying felony, and that is a felony of the second degree, the maximum prison term for that offense shall be equal to the minimum term imposed on the defendant plus fifty percent (50%) of that term.

\* \* \*

D.   Rebuttable Presumption

The Court has notified the defendant that, pursuant to Ohio Revised Code Section 2967.271(B), it is presumed that he will be released from prison upon the expiration of the minimum prison term imposed, which is seven \* \* \* years.

The Court further notified the defendant that, pursuant to Ohio Revised Code Section 2967.271(C), ODRC may rebut the presumption at a hearing and, if rebutted, he may remain in prison after the expiration of the minimum prison term for a period of time up to the maximum term, which is ten and one-half * * * years.

ODRC may rebut the presumption only if it determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the defendant is classified at the time of the hearing, both of the following apply:

(a) During the defendant's incarceration, he committed institutional rule infractions that involved compromising the security of a state corrections institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that he has not been rehabilitated.

(b) The defendant's behavior while incarcerated demonstrates that he continues to pose a threat to society.

(2) Regardless of the security level in which the defendant is classified at the time of the hearing, he has been placed by ODRC in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the defendant is classified by the department as a security level three, four, or five, or at a higher security level.

**{¶ 9}** The judgment entry further set forth several statutory provisions pursuant to which Gatewood's sentence could be reduced, and it contained provisions regarding post-release control.

**{¶ 10}** Gatewood appeals from his conviction.

**{¶ 11}** Gatewood raises two assignments of error on appeal:

GATEWOOD'S SENTENCE IS CONTRARY TO LAW BECAUSE THE TRIAL COURT DID NOT CONSIDER R.C. 2929.11 AND 2929.12.

GATEWOOD'S SENTENCE IS CONTRARY TO LAW BECAUSE THE TRIAL COURT DID NOT ADVISE GATEWOOD OF ALL THE 2929.19(B)(2)(c) NOTIFICATIONS.

**{¶ 12}** We will first consider Gatewood's second assignment of error. R.C. 2929.19(B)(2)(c), which is part of the Reagan Tokes Act, provides:

* * * [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term

imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration

of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

{¶ 13} We recently concluded that the trial court is statutorily required at a sentencing hearing to orally inform a defendant of all of the above-noted R.C. 2929.19(B)(2)(c) notifications. We also concluded that a trial court's failure to do so requires reversal of the sentence and a remand to the trial court for the sole purpose of conducting a new sentencing hearing consistent with R.C. 2929.19(B)(2)(c). *State v. Massie*, 2d Dist. Clark No. 2020-CA-50, 2021-Ohio-3376. In coming to these conclusions, we rejected the State's argument that the "trial court sufficiently notified Massie of all the information in R.C. 2929.19(B)(2)(c) by simply including the information in the judgment entry of conviction." *Id.* at ¶ 20.

{¶ 14} Gatewood argues that the trial court did not sufficiently advise him of all the R.C. 2929.19(B)(2)(c) notifications at his sentencing hearing. In light of *Massie,* the State concedes that the trial court's failure to orally advise Gatewood of the R.C. 2929.19(B)(2)(c) notifications requires reversal of the sentence and a remand to the trial court for the sole purpose conducting a new sentencing hearing compatible with R.C. 2929.19(B)(2)(c). The second assignment of error is sustained.

{¶ 15} In his first assignment of error, Gatewood asserts that his sentence is contrary to law because, in coming to its sentencing decision, the trial court did not consider the "not likely to commit future crimes" sentencing factors set forth in R.C. 2929.12(E). Gatewood supports this argument by pointing to the trial judge's comment at the sentencing hearing that "I don't care what your prior record is or isn't." By

Gatewood's reckoning, this comment indicates a failure to consider the R.C. 2929.12(E) recidivism factors. We disagree.

{¶ 16} R.C. 2929.12(E) states as follows:

The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

* * *

{¶ 17} In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, the Supreme Court of Ohio "clarified an appellate court's review of a felony sentence under R.C. 2953.08(G)(2)." *State v. Litteral*, 2d Dist. Clark No. 2021-CA-10, 2022-Ohio-1187, ¶ 21. "In *Jones*, the court held that 'R.C. 2953.08(G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12.' " *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 17, quoting *Jones* at ¶ 39.

{¶ 18} "In so holding, the Supreme Court explained that 'an appellate court's determination that the record does not support a sentence does not equate to a

determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b).' " *Id.*, quoting *Jones* at ¶ 32. "Therefore, pursuant to *Jones*, an appellate court errs if it relies on the dicta in *Marcum* and modifies or vacates a sentence 'based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12.' " *Id.*, quoting *Jones* at ¶ 29, and referencing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

**{¶ 19}** We also stressed in *Dorsey* that, due to "the Supreme Court's holding in *Jones*, when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record. We simply must determine whether those sentences are contrary to law." *Dorsey* at ¶ 18. Consequently, " '[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.' " *Id.*, quoting *State v. Brown,* 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.).

**{¶ 20}** Gatewood had a minimal juvenile record and no adult criminal convictions. Thus, the comment at issue was made within the context of this minimal criminal history and the seriousness of Gatewood's conduct. In our view, read in context, the comment, while unartfully phrased, expressed the trial court's conclusion that the seriousness of Gatewood's criminal conduct outweighed his minimal criminal history. And, based upon the record, as discussed below, this conclusion cannot be faulted.

**{¶ 21}** According to the presentence investigation report (PSI), Gatewood and his

co-defendant, Douglas Green, were at a gas station at around 2:30 a.m. on November 8, 2020. PSI, p. 3. While there, they assisted the victim (Nate) and his girlfriend (Mandee) in getting their car started. During this process, a conversation about marijuana ensued, and Nate agreed to purchase marijuana. However, Nate did not fully pay for the drugs, and shooting ensued at the gas station, resulting in Nate's being wounded in the head and sustaining serious injury. PSI, p. 1-3. While Green's shots were the ones that appear to have injured Nate, Gatewood admitted to the police on November 30, 2020, that he had fired a .22 caliber rifle during the incident, and 11 casings from that gun were found at the gas station. November 8, 2020 Springfield Police Division Inter-Office Communication of Det. Massie, p. 7.

{¶ 22} Later, when Gatewood discussed the incident with the probation officer conducting the PSI, Gatewood portrayed himself as an innocent bystander to Green's drug transaction and bad conduct. According to Gatewood, Green had agreed to sell marijuana to Nate and had gone over to Nate's car. Gatewood claimed he had told Green that something did not feel "right," but he did not know what went on after that. PSI p. 2. While waiting for Green, Gatewood was sitting in his car listening to the radio and scratching off lottery tickets. PSI p. 4. Gatewood then heard gun fire and looked over to see Green firing shots. Because Gatewood did not know what was going on, he grabbed Green's AR, which was in the car. Gatewood stated to the probation officer that he did not recall firing the AR. PSI p. 2. He also denied shooting the AR and claimed he had told the police that he shot the gun in order to stop their interrogation. PSI p. 3.

{¶ 23} When Nate's vehicle left the gas station, Gatewood also left. He said that

he floored his car toward home to get rid of Green, which also "happened" to be the way Nate's car had gone.   PSI p. 2.   According to Gatewood, Green "got out of" Gatewood's window and fired an AK at the other car.   *Id.*   Gatewood became upset at Green for endangering Gatewood's own life and told Green that when they got back home, Green should get as far away from him as possible.    PSI p. 3.   Notably, Gatewood did not express any concern about injury to the occupants of the other car.   Gatewood also claimed Green was very apologetic for having involved him in this incident.   PSI p. 3.

**{¶ 24}** Gatewood's account contrasts significantly with the statement of Nate's friend, Mandee, who was driving the car in which Nate was riding.   Mandee indicated that both "the males" (Gatewood and Green) talked to Nate about the drug purchase. After negotiating a price of $390, "the males weighed the weed out on a scale."   Massie Memo at p 1-2.   After this occurred, Nate got back in the car, and Mandee began to pull off, thinking the transaction was done.   Nate told her he had not given them all the money, and "the suspects began firing several shots at her vehicle."   *Id.* at p. 2.   Mandee told Nate she was not going to stop at that point, and as she drove southbound on N. Belmont Avenue, "shots continued to strike her vehicle."   *Id.*   Mandee thought she had been struck but later realized that this must have been glass hitting her neck.   *Id.*

**{¶ 25}** After Mandee turned right on another street, the suspects were chasing them, and several more shots were fired at her car.   *Id.*   At one point, the other car drove up beside them and continued firing, and "[t]he males" stated, "I kill you."   *Id.* at p. 2 and November 8, 2020 Springfield Police Division Inter-Office Communication of Off. E.B. Taylor, p. 2.   Mandee was crouched down while driving to avoid being shot and hit a

parked car. Massie Memo at p. 2. Mandee's car had cracks in the front windshield and both doors had been shattered by bullets. *Id.* During her account, Mandee referred repeatedly to plural individuals committing these actions – not just to Green.

{¶ 26} The crime investigation also uncovered videos of Gatewood with guns in his vehicle. In addition, when Gatewood's home was searched, the police found a .22 caliber rifle and ammunition, although Gatewood stated that it was not the gun he shot the night of the crime. Massie Memo at p. 5-6.

{¶ 27} These facts were in the PSI, which the trial court read and which, in part, informed its sentencing decision. Unquestionably, the actions of Gatewood and Green caused serious injury to Nate and endangered the life of another person. As the trial court stressed, Nate, having been shot in the head, could have died. In that event, the sentence would have been 15 years to life. Moreover, Mandee could easily have died as well. The fact that more serious outcomes were luckily avoided does not lessen the degree of peril in which the occupants of the other car were placed.

{¶ 28} The court's comment discounting Gatewood's history was also made as part of the trial court's discussion that it had a responsibility to protect the community. Again, while the court's statement could have been better phrased, it must be read in context of Gatewood's very serious conduct. Furthermore, we have stressed that "[i]t is within the discretion of the individual judge 'to determine the weight to assign a particular statutory factor.' " *State v. Fields*, 2d Dist. Clark No. 2020-CA-19, 2020-Ohio-5538, ¶ 41, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). Implicit in this discretion is that the court could have chosen to give no weight to Gatewood's lack of

adult criminal history (bearing in mind that Gatewood had only been an adult for a short time before engaging in these crimes).

{¶ 29} Finally, while the above discussion disposes of the issue, we also note that the trial court made the appropriate findings under R.C. 2929.11 and R.C. 2929.12 in its journal entry. "The journalized order is what controls the sentence because a court speaks only through its journal." *State v. Meister*, 76 Ohio App.3d 15, 19, 600 N.E.2d 1103 (1st Dist.1991), citing *State v. Ellington*, 36 Ohio App.3d 76, 521 N.E.2d 504 (9th Dist.1987). Moreover, "[w]here the journalized order and the trial judge's comments from the bench conflict, the journalized order is controlling." *Id.*, citing *Economy Fire & Cas. Co. v. Craft Gen. Contractors, Inc.*, 7 Ohio App.3d 335, 337, 455 N.E.2d 1037 (10th Dist.1982) (noting that the trial court stated from the bench that the sentence would be conditional, but it did not include this in its judgment entry; as a result, the entry controlled). *See also State v. Lowe*, 2d Dist. Clark No. 2016-CA-18, 2017-Ohio-27, ¶ 7 (court did not err by failing to cite R.C. 2929.11 and R.C. 2929.12 at the sentencing hearing; the court included the statutes in judgment entry, and a court speaks through its journal).

{¶ 30} Viewed in context, we conclude that the trial court's comment, though a bit injudicious, was isolated and of little import. Moreover, the judgment entry reflects that the trial court appropriately considered the relevant statutory provisions, and that is all that is required.

{¶ 31} For the reasons stated, Gatewood's first assignment of error is overruled.

**Conclusion**

**{¶ 32}** The first assignment of error is overruled, and the second assignment of error is sustained. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court for it to conduct a new sentencing hearing in compliance with R.C. 2929.19(B)(2)(c).

. . . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., dissents:

**{¶ 33}** I would reverse the trial court's judgment and order an entirely new sentencing hearing. The majority finds that the trial court's proclamation "I don't care what your prior record is or isn't" was simply a "bit injudicious" and "inartfully phrased" when considered in context. I strongly disagree. When exercising its sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 38.

**{¶ 34}** "From the moment that a person enters the criminal justice system, their prior record is their destiny." *The Paradox of Criminal History,* 42 Cardozo Law Review, 1373, 1384 (July 2021). R.C. 2929.12 requires the court to consider and weigh juvenile adjudications and adult criminal convictions. Here, the court pronounced "I don't care" about Gatewood's record. This evinced an abandonment of legislative mandatory sentencing considerations. A trial judge should not be "consciously indifferent" to the legislative mandatory language in R.C. 2929.12. *Black's Law Dictionary* 891 (10th ed.

2019) defines conscious indifference as "a lack of interest or concern."

{¶ 35} Additionally, we cannot rely on the judgment entry as it is unequivocally contradicted by the trial court's statement on the record at sentencing. Gatewood's record was entirely juvenile: criminal damaging (a second-degree misdemeanor) and possession of criminal tools (a first-degree misdemeanor). Although he was young, he had no adult criminal history. Granted, the trial court could ascribe minimal weight or no weight to his history, and the trial court was not required to justify its balancing. However, a dismissive "I don't care" is a refusal to consider exactly what the Ohio legislature and case law mandate. A trial judge cannot give R.C. 2929.12(E) no weight by excluding it from consideration. "A sentence is contrary to law when it fails to consider * * * the sentencing factors" set forth in R.C. 2929.12. *Brown,* 2017-Ohio-8416, 99 N.E.3d 1135, at ¶ 74.

{¶ 36} As Justice Fischer noted in his concurrence in *Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, at ¶ 47:

There is also no reason to believe that a trial court's consideration under R.C. 2929.11 and 2929.12 is wholly unreviewable. First, although, as the majority opinion explains, R.C. 2929.11 and 2929.12 do not require a trial court to make any specific findings on the record, those statutes are not optional. Both statutes use the term "shall" multiple times in relation to other matters. For example, R.C. 2929.11(A) and 2929.12(A) through (F) set forth matters that a sentencing court "shall consider," and R.C. 2929.11(A) provides that the trial court "shall be guided by" the three

overriding purposes of felony sentencing. R.C. 2929.11(B) further states that the sentence imposed by the trial court "shall" meet certain specific criteria. This court construes the word "shall" as " '*mandatory* unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.' " (Emphasis and brackets added in *Morgan.*) *State v. Morgan,* 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 22, quoting *Dorrian v. Scioto Conservancy Dist.,* 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus.

**{¶ 37}** We should not encourage, condone, or accept any judge, under any facts, no matter how egregious, refusing to consider R.C. 2929.12(E) factors.

**{¶ 38}** I would reverse.

Copies sent to:

Ian A. Richardson
Lucas W. Wilder
Hon. Douglas M. Rastatter