[Cite as *State v. Carter*, **2022-Ohio-206.**]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-36 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-155 |
| | : | |
| LARRY CARTER, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 28th day of January, 2022.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

H. MICHELE THOMAS, Atty. Reg. No. 0082848, P.O. Box 695, Eaton, Ohio 45320
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Larry Carter Jr. pled guilty in the Clark County Court of Common Pleas to one count of improper handling of a firearm in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(B). He appeals from his conviction. Counsel for Carter has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that there are no arguably meritorious arguments to raise on appeal. Carter was notified that he had the right to file a pro se brief, but he did not do so. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} On March 6, 2021, Carter's girlfriend, Diane Fick, contacted law enforcement and reported that Carter had hit her with a chair and stolen her motor vehicle. She also stated that she did not want to discuss the physical altercation but did want her car returned so that she could go to work in the morning. Fick stated that she and Carter had lived together for seven years and that Carter had just recently moved out. He was supposed to come over and gather some belongings when they decided to hang out longer. Carter was preparing to leave when he was unable to locate his keys. He became agitated and hit Fick with a chair. He then took Fick's keys and ran out of the residence.

{¶ 3} Law enforcement officers were standing in the driveway of Fick's home upon Carter's return. Carter drove to another home and used that driveway to turn around, but the officers initiated a traffic stop. Carter was removed from the vehicle and detained. While an officer was doing a pat-down, he discovered two 20-gauge shell casings in Carter's coat pocket. The officer asked Carter if he had a shotgun as well. Carter stated that he had driven to pick up the shotgun from a friend and that was why it was in the motor vehicle.

{¶ 4} The law enforcement officers placed Carter under arrest and in the backseat

of a patrol car. Officers then searched the vehicle and located the shotgun wrapped in a sweat pants leg in the backseat, lying half on the seat and half on the floorboard. The shotgun had two 20-gauge shells in the barrel.

{¶ 5} The officers requested that Fick come down and collect her belongings from the vehicle. Fick said she did not want Carter to be charged with stealing the motor vehicle or the assault that had occurred earlier. However, while the officers were speaking with her, she stated that she was having trouble thinking due to being hit in the head with a chair.

{¶ 6} Fick was advised that due to her injuries and her statements, Carter would be charged with domestic violence. Fick stated that she did not want to do anything due to a fear that Carter would kill her. An officer took photos of Fick's injuries and one photo of Carter. Officers then transferred Carter to Springfield Police Headquarters where he was charged with having weapons while under disability and improper handling of a firearm in a motor vehicle; the indictment also included a forfeiture specification related to the gun.

{¶ 7} On May 17, 2021, Carter pled guilty to improper handling of a firearm in a motor vehicle, in exchange for which the charge of having weapons while under disability was dismissed; Carter also agreed to the forfeiture of the weapon. During the plea hearing, the trial court asked if Carter understood the terms of the agreement, and Carter stated that he did. The trial court then asked Carter if he wanted to proceed with the plea agreement. Carter stated that he had "no choice" in accepting the plea agreement, as reflected in the following exchange:

THE COURT: Do you understand the terms of the agreement, Mr. Carter?

THE DEFENDANT: Yes, sir.

THE COURT: Is that what you want to do this morning?

THE DEFENDANT: I have no choice, Your Honor.

THE COURT: Really? Because you have a choice to go to trial if you want a trial.

THE DEFENDANT: No, I just don't like –

THE COURT: Will you take your mask off and speak up?

THE DEFENDANT: Yes, sir.

THE COURT: You have a choice. You can plead guilty or you can go to trial. You have a trial scheduled for tomorrow.

THE DEFENDANT: I plead guilty.

THE COURT: So you do have a choice, right?

THE DEFENDANT: Yes, sir.

Plea Hearing Tr. p. 4-5.

{¶ 8} The trial court then asked Carter if he was under the influence of drugs or alcohol. Carter replied that he had had a couple of beers the previous day. The trial court asked if he was a United States citizen and if he understood the nature of the case and the facts placed on the record by the prosecutor, to which Carter replied affirmatively. The trial court asked if Carter was on probation, community control, post-release control, or parole, to which Carter replied that he was not.

{¶ 9} The trial court also asked if Carter's signature was on the written plea document, if he had had an opportunity to review it with his lawyer, and if he understood it. Carter replied in the affirmative. The trial court asked if it was Carter's understanding that, in exchange for his guilty plea to count two (improper handling of a firearm), the

State had agreed to dismiss count one (having weapons while under disability). Carter stated that it was.

{¶ 10} The trial court asked Carter if any other promises had been made to him or if he had been threatened, pressured, or coerced into pleading guilty. Carter stated that no other promises (other than the dismissal of count one) were made to him, and that he had not been threatened, pressured, or coerced into pleading guilty. The trial court asked if Carter was entering the guilty plea voluntarily, to which Carter replied affirmatively. The trial court asked if Carter understood that, upon his pleading guilty, the court would accept his plea, find him guilty, order a presentence investigation, and schedule sentencing for a later date. Carter stated that he understood.

{¶ 11} The trial court reviewed the possible maximum prison term and fine for the improper handling of a firearm in a motor vehicle offense. Carter stated that he understood. The trial court also informed Carter that if he were placed on community control, the conditions could include time in the county jail, fines, and restitution. Carter replied that he understood.

{¶ 12} The trial court informed Carter that if he were to be sentenced to prison, he could be placed on post-release control for up to three years. The trial court also reviewed the potential consequences of violating post-release control and the consequences of being convicted of a felony offense while on post-release control. Carter stated that he understood.

{¶ 13} The trial court also asked if Carter understood that he had the right to a jury trial, the right to require the State to prove beyond a reasonable doubt every element of the offense, the right to confront witnesses, cross-examine witnesses, and use the Court's

subpoena power to compel the attendance of witnesses, the right to testify in his own defense (but could not be forced to do so), that he could only be convicted upon the unanimous verdict of the jury, and that by pleading guilty he would be waiving all of those rights. Carter replied in the affirmative.

{¶ 14} Carter then pled guilty to improper handling of a firearm in a motor vehicle, and the trial court found that Carter had knowingly, voluntarily, and intelligently waived his rights and entered into a plea of guilty. The trial court found Carter guilty upon his plea and ordered a presentence investigation. The trial court scheduled his sentencing for June 7, 2021.

{¶ 15} On June 7, 2021, the trial court sentenced Carter to 18 months in prison. The trial court also stated that, upon his release, Carter could be placed on post-release control for up to three years and that he would receive credit for time spent in the Clark County Jail. The court did not impose a fine, and it ordered forfeiture of Carter's firearm.

{¶ 16} Carter appeals.

## I. *Anders* Appeal Standard

{¶ 17} Carter's appellate counsel has filed a brief pursuant to *Anders v. California* 386 U.S. 738, 87 S.Ct. 1396 18 L.Ed.2d 493, indicating that she found no arguable issues for appeal. Counsel offers one potential assignment of error: whether the trial court erred in imposing the maximum prison term of 18 months when Carter's only prior felony was in 1998.

{¶ 18} When an *Anders* brief is filed, the appellate court must determine, "after a full examination of the proceedings," whether the appeal is "wholly frivolous." *Id.* at 744; *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not

frivolous merely because prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue -- whether presented by appellate counsel, presented by the defendant (if a pro se brief is filed), or found through an independent analysis -- is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. *Id.* at ¶17.

{¶ 19} "An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and is void." *Id.*

{¶ 20} } "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, in reviewing the plea colloquy, the focus should be on whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, 164 Ohio St.3d 1; 2020-Ohio-2765, 164 N.E.3d 286, ¶ 12.

{¶ 21} Crim.R. 11(C)(2) requires a trial court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 22} In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The test for prejudice is "whether the plea would have otherwise been made." *Id.*

{¶ 23} This general rule is subject to two exceptions. *Id.* at ¶ 16. First, the trial court must comply strictly with Crim.R. 11(C)(2)(c) as it pertains to the waiver of federal constitutional rights. *Id.* at ¶ 14; *Clark* at ¶ 31. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14.

{¶ 24} Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. *See also State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11 (a defendant must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a non-constitutional right, but no showing of prejudice is required if the trial court completely failed to comply).

{¶ 25} We have reviewed the transcript of the plea hearing and find that the trial court fully complied with the requirements of Crim.R. 11. The court initially questioned Carter about his guilty plea. The court inquired if he was under the influence of alcohol or drugs. The court asked Carter if he had reviewed the plea agreement with his attorney. All of Carter's responses were appropriate.

{¶ 26} The trial court reviewed the offense to which Carter was entering a plea and the maximum prison sentence and fine for the offense. The court also reviewed what post-release control is and the potential consequences of violating post-release control.

{¶ 27} The trial court reviewed the constitutional rights that he was waiving by entering a plea. Carter denied that his plea was the result of promises (other than the plea agreement) or threats. Carter pled guilty to one count of improper handling of a firearm in a motor vehicle.   The trial court found that Carter had entered his plea voluntarily and that Carter had signed the written plea form.

{¶ 28} Upon review of the plea hearing transcript, we find no non-frivolous issues for appeal relating to Carter's plea.

{¶ 29} In addition, we find nothing in the record to suggest that anything occurred

prior to the plea hearing that precluded Carter from entering a knowing, intelligent, and voluntary plea. A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3. We find no non-frivolous issues related to the events prior to Carter's guilty plea.

{¶ 30} We now turn to Carter's sentence. In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 31} } "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500,

2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 32}** The presentence investigation report reflects that Carter was 41 years old at the time of the offense and disposition. Carter had both prior juvenile and adult convictions.

**{¶ 33}** The maximum penalty for one count of improper handling of a firearm in a motor vehicle, a felony of the fourth degree, was 18 months in prison and a $5,000 fine. The trial court's sentencing of 18 months with no fine was not contrary to law.

**{¶ 34}** We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300. We conclude that no non-frivolous issues exist for appeal in this case.

## II. Conclusion

**{¶ 35}** The trial court's judgment is affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Ian A. Richardson
H. Michele Thomas
Larry Carter, Jr.
Hon. Douglas M. Rastatter