[Cite as *State v. Monfort*, 2024-Ohio-3126.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 2023-CA-33 |
| v. | : | Trial Court Case No. 2023 CR 139 |
| JAY ALEXANDER MONFORT | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 16, 2024

. . . . . . . . . . .

DAWN S. GARRETT, Attorney for Appellant

SAMANTHA B. WHETHERHOLT, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Jay Alexander Monfort appeals from his convictions in the Champaign County Court of Common Pleas after pleading guilty to one count of aggravated possession of methamphetamine and one count of possession of cocaine. In support of his appeal, Monfort argues that his guilty pleas were invalid because he did

not realize the trial court could impose a sentence that exceeded the maximum recommended prison term for his offenses, and the trial court imposed an additional 578 days in prison as a sanction for Monfort's committing the offenses while on post-release control. Monfort also claims that the portion of his sentence ordering him to serve the 578-day sanction is contrary to law. For the reasons outlined below, we disagree with Monfort's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On July 10, 2023, a Champaign County grand jury returned a four-count indictment charging Monfort with two fifth-degree-felony counts of aggravated possession of drugs (methamphetamine) and two fifth-degree-felony counts of possession of drugs (fentanyl-related compound and cocaine). The charges stemmed from allegations that a corrections officer from the Tri-County Regional Jail in Champaign County, Ohio, discovered the drugs in Monfort's underwear while Monfort was being held on a misdemeanor theft charge.

{¶ 3} After negotiating with the State, Monfort agreed to plead guilty to Counts One and Four of the indictment, i.e., aggravated possession of methamphetamine and possession of cocaine. In exchange for his guilty pleas, the State agreed to dismiss the remaining two counts in the indictment and to recommend a 16-month prison term to be served concurrently with a prison term that Monfort was serving out of Franklin County, Ohio.

{¶ 4} As part of the plea agreement, Monfort agreed to forfeit certain property and

to pay court costs and court-appointed legal fees. The parties also jointly agreed to waive a presentence investigation. In addition, the parties agreed that Monfort was "subject to the imposition of 578 days of potential [post-release control] enhancement time" since Monfort had committed his offenses while on post-release control. Plea Hearing Tr. (Oct. 3, 2023), p. 3-4; Plea Agreement, p. 4. In support of the 578-day calculation, the State presented State's Exhibit 2, which showed that Monfort had been ordered to serve 1,095 days of post-release control and had credit for 517 days served (1095 – 517 = 578). *Id.* The State, however, did not recommend imposing any post-release control enhancement time as part of Monfort's sentence.

{¶ 5} On October 3, 2023, the trial court held a plea hearing and accepted Monfort's guilty pleas to aggravated possession of methamphetamine and possession of cocaine. Before doing so, the trial court engaged Monfort in a plea colloquy. During the plea colloquy, the trial court explained, among other things, that each of Monfort's offenses were fifth-degree felonies that carried a maximum 12-month prison term and a maximum $2,500 fine. The trial court told Monfort that "if you were to receive maximum consecutive sentences, you could receive 24 months in prison and a $5,000 fine." Plea Hearing Tr. at 14. The trial court also advised Monfort that in addition to that sentence, "the Court would have to decide at sentencing whether to impose any post-release control enhancement penalty." *Id.* The court explained that the "penalty can be a maximum of the 578 days [he had left to serve on post-release control]" and "must * * * be served consecutive to the underlying offenses." *Id.*

{¶ 6} After the plea hearing, the trial court immediately proceeded to sentencing

Monfort. For each possession offense, the trial court imposed a $500 fine and a 12-month prison term and ordered those sentences to be served concurrently to one another. The trial court also imposed 578 days in prison as a sanction for committing his possession offenses while on post-release control. Accordingly, the trial court imposed an aggregate term of 12 months plus 578 days in prison and ordered that term to be served concurrently with the sentence he was serving out of Franklin County.

{¶ 7} Monfort now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ 8} Under his sole assignment of error, Monfort contends that his guilty pleas to aggravated possession of methamphetamine and possession of cocaine were invalid because, at the time of the pleas, he did not realize the trial court could impose a sentence that exceeded the maximum recommended prison term for those offenses. Monfort also claims that the 578-day post-release control sanction imposed by the trial court at sentencing is contrary to law. The claims pertaining to Monfort's guilty pleas and sentence are addressed separately below.

*Guilty Pleas*

{¶ 9} When reviewing the validity of a defendant's plea, "[a]n appellate court must determine whether the record affirmatively demonstrates that [the] plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2012-Ohio-6051, ¶ 7 (2d Dist.), citing

*Boykin v. Alabama*, 395 U.S. 238, 243 (1969). "If a defendant's plea is not knowing, intelligent, and voluntary, it 'has been obtained in violation of due process and is void.' " *State v. Carter*, 2022-Ohio-206, ¶ 19 (2d Dist.), quoting *Russell* at ¶ 7. "In order for a plea to be given knowingly, [intelligently,] and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2012-Ohio-199, ¶ 13 (2d Dist.). Pursuant to Crim.R. 11(C), the trial court should not accept a defendant's guilty plea to a felony offense without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶ 10} A defendant is generally "not entitled to have his plea vacated unless he

demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *State v. Dangler*, 2020-Ohio-2765, ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). There are, however, two circumstances where it is unnecessary for a defendant to demonstrate prejudice to vacate his plea. The first is when the trial court fails to explain the notifications under Crim.R. 11(C)(2)(c), i.e., the constitutional rights that a defendant waives by pleading guilty or no contest. *Id.* at ¶ 14. The second is when the trial court *completely* fails to comply with a portion of the nonconstitutional notifications under Crim.R. 11(C)(2)(a) or (b). *Id.* at ¶ 15. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *Nero* at 108. "The test for prejudice is 'whether the plea would have otherwise been made.' " *Id.*, quoting *Nero* at 108.

{¶ 11} In this case, Monfort does not dispute that the trial court engaged him in a plea colloquy and does not specifically allege that the trial court failed to give the notifications required by Crim.R. 11(C). Instead, Monfort contends that his guilty pleas were invalid because he "did not realize that the court could impose a sentence longer than the maximum recommended for the underlying felonies." It is unclear from this argument whether Monfort is claiming that he did not realize the trial court could impose a sentence that exceeded the 16-month prison term recommended by the State or the 24-month maximum prison term available for his two drug possession offenses. Regardless, the record establishes that his sentence exceeded both, as the trial court

imposed a 12-month prison term *plus* 578 days in prison as a sanction for his committing the offenses while on post-release control.

{¶ 12} Under "R.C. 2929.141 . . . a defendant who commits a new felony offense while on [post-release control] can be ordered by the trial court that is imposing [a] sentence on the new felony offense to serve additional sanctions for violating [post-release control] including a prison term." *State v. Cheek*, 2022-Ohio-4736, ¶ 11 (2d Dist.). "If a prison term is imposed for the [post-release control] violation, it 'shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony.' " *Id.*, quoting R.C. 2929.141(A)(1). The prison term for the post-release control violation "must be served consecutively to the prison term imposed on the new felony." *Id.*, citing R.C. 2929.141(A)(1).

{¶ 13} We note that Monfort does not dispute that he was on post-release control when he committed his two drug possession offenses. He also does not dispute that he had 578 days of post-release control remaining, i.e., 1095 days ordered minus 517 days served. Instead, Monfort claims that he was unaware the sanction for violating post-release control could be applied in a manner that would result in a sentence that exceeded either the State's recommended 16-month prison term or the 24-month maximum prison term available for his drug possession offenses. Whichever claim Monfort meant to argue, neither is supported by the record.

{¶ 14} During the plea hearing, the trial court advised Monfort that, in addition to the maximum possible 24-month prison term, the court could impose "any post-release

control enhancement penalty." Plea Hearing Tr. at 14. The trial court then explained that such a penalty could "be a maximum of the 578 days" he had left to serve on post-release control. *Id.* Thereafter, the trial court told Monfort that if it decided to impose a post-release control penalty, it would "be served consecutive to the underlying offenses." *Id.* As a result, the trial court specifically advised Monfort that "the maximum penalty [he] can get from this Court would be 24 months plus 578 days in prison." *Id.* at 14-15. The court later emphasized that fact by saying: "So when we're talking maximum sentences, worst case scenario, you could get 24 months plus 578 days[.]" *Id.* at 15. When the trial court asked Monfort whether he understood the maximum prison sentence of 24 months plus 578 days, Monfort answered: "Yes, Your Honor, I do." *Id.*

{¶ 15} After discussing the maximum sentence, the trial court ensured that Monfort had read and understood the plea form, which stated, in pertinent part, as follows:

**Post-Release Control Penalty**

As of the Plea Hearing, the Defendant is subject to five hundred seventy[-]eight (578) days of Post-Release Control Enhancement Penalty. The total number of penalty days shall be reduced proportionally "one for one" by each day up until the Defendant is sentenced on this case. *State v. Evilsizor*, 2d Dist. Champaign No. 2017-CA-01, 2017-CA-10, 2018-Ohio-3599. Any Post Release Control Enhancement Penalty so imposed shall be served consecutively to the underlying sentences in counts One and Four.

Pleas Agreement, p. 2. *See also* Plea Hearing Tr. at 24.

{¶ 16} Based on all the foregoing portions of the record, it is clear that Monfort understood the trial court could, as a sanction for committing his offenses while on post-release control, impose an additional 578 days to the maximum allowable prison term for his offenses. Therefore, Monfort's claim that he did not realize his sentence could be longer than either the 16-month prison term recommended by the State or the 24-month maximum prison term for his offenses lacks merit.

{¶ 17} Monfort also suggests that his guilty pleas were invalid because the trial court imposed a longer prison sentence than what the State had recommended in the plea agreement. It is, however, well established that "[a] trial court is not bound to accept the State's recommended sentence in a plea agreement." *State v. Downing*, 2020-Ohio-3984, ¶ 34 (2d Dist.), citing *Akron v. Ragsdale*, 61 Ohio App.2d 107, 109 (9th Dist. 1978). *Accord State v. Morris,* 2023-Ohio-1765, ¶ 49 (2d Dist.)*; State v. Kenney*, 2022-Ohio-2977, ¶ 15 (6th Dist.). We have explained that "a trial court does not err in exceeding a sentence recommended in a plea agreement where the defendant has been made aware of the applicable penalties and the possibility of receiving a greater sentence than the State proposed." *State v. Melson*, 2023-Ohio-1231, ¶ 11 (2d Dist.), citing *Downing* at ¶ 34. (Other citation omitted.)

{¶ 18} In this case, the record of the plea hearing establishes that Monfort knew the trial court was not bound by the State's recommended sentence. The trial court asked Monfort: "Do you understand that the Court is not required to follow the sentencing recommendation of the Prosecutor, your attorney, or yourself?" Plea Hearing Tr. at 16-17. In response, Monfort answered: "Yes, Your Honor." *Id*. at 17. The trial court

thereafter stated: "Just to be clear, the Court is free to impose any sentence that is authorized by law. Do you understand that?" and Monfort once again answered: "Yes, Your Honor." *Id.*

{¶ 19} Because the trial court advised Monfort at the plea hearing that it was not required to impose the sentence recommended by the State and properly advised Monfort of the maximum possible prison term it could impose at sentencing, Monfort's claim that his guilty plea was not knowingly, intelligently, and voluntarily entered lacks merit.

*Sentence*

{¶ 20} "[W]hen reviewing felony sentences, this court must apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. McCoy*, 2024-Ohio-98, ¶ 24 (2d Dist.), citing *State v. Marcum*, 2016-Ohio-1002, ¶ 7. "Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes, or (2) the sentence is otherwise contrary to law." *Id.*, citing *Marcum* at ¶ 9, citing R.C. 2953.08(G)(2). " '[O]therwise contrary to law' means "in violation of statute or legal regulations at a given time." ' " *State v. Bryant*, 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* (6th Ed. 1990).

{¶ 21} In this case, Monfort claims that the portion of his sentence ordering him to serve 578 days in prison as a sanction for committing his offenses while on post-release

control is contrary to law. Monfort does not provide any legal authority supporting this argument. Because Monfort's sentencing argument does not involve any of the statutes enumerated in R.C. 2953.08(G)(2), we must simply determine whether the 578-day sanction for violating post-release control is contrary to law.

{¶ 22} "A sentence for a post-release control violation is not contrary to law so long as it comports with the requirements of R.C. 2929.141." *State v. Rosales*, 2020-Ohio-1646, ¶ 10 (2d Dist.), citing *State v. Lehman*, 2015-Ohio-1979, ¶ 17 (2d Dist.). As previously discussed, under "R.C. 2929.141 * * * a defendant who commits a new felony offense while on [post-release control] can be ordered by the trial court that is imposing [a] sentence on the new felony offense to serve additional sanctions for violating [post-release control] including a prison term." *Cheek*, 2022-Ohio-4736, at ¶ 11 (2d Dist.). Section (A)(1) of the statute provides that "[t]he maximum prison term for the violation shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony." R.C. 2929.141(A)(1). The statute also provides that: "A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony." *Id.*

{¶ 23} Again, Monfort does not dispute that he committed the drug possession offenses in this case while he was on post-release control or that he had 578 days of post-release control left to serve. Upon review, we find that the trial court properly imposed the sanction under R.C. 2929.141(A)(1) when it ordered Monfort to serve 578 days in prison consecutive to the 12-month prison term it imposed for Monfort's offenses.

Because the 578-day sanction complies with R.C. 2929.141(A)(1), Monfort's claim that the sanction is contrary to law lacks merit.

{¶ 24} Because all of Monfort's claims challenging his guilty pleas and sentence lack merit, his sole assignment of error is overruled.

## Conclusion

{¶ 25} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.