[Cite as *State v. Farler*, 2026-Ohio-1070.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30494 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 01096 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| KENNETH PAUL FARLER III | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 27, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

MONTGOMERY C.A. No. 30494

JOHNNA M. SHIA, Attorney for Appellant
MICHAEL P. ALLEN, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Kenneth Paul Farler III appeals from his convictions in the Montgomery County Court of Common Pleas after he pled guilty to single counts of involuntary manslaughter, endangering children, and reckless homicide, and 12 counts of having weapons while under disability. In support of his appeal, Farler claims that his guilty pleas were invalid because the trial court failed to personally address him at his plea hearing and failed to determine whether he understood the effect of his guilty pleas. Farler also claims that his trial counsel provided ineffective assistance by withdrawing two branches of his motion to suppress and by failing to advise him to plead no contest as opposed to guilty. In addition, Farler claims that the trial court erred at sentencing by imposing consecutive sentences and by failing to consider his present and future ability to pay financial sanctions. For the reasons outlined below, the judgment of the trial court is affirmed.

**Facts and Course of Proceedings**

{¶ 2} On April 22, 2024, a Montgomery County grand jury returned an indictment charging Farler with single counts of involuntary manslaughter in violation of R.C. 2903.04(A), endangering children in violation of R.C. 2919.22(A)/(E)(2)(c), and reckless homicide in violation of R.C. 2903.041(A). Farler was also charged with four counts of having weapons while under disability in violation of R.C. 2923.13(A)(2) and eight counts of having weapons while under disability in violation of R.C. 2923.13(A)(3). The counts for involuntary manslaughter, endangering children, reckless homicide, and the first three

counts for having weapons while under disability all included three-year firearm specifications.

{¶ 3} At his arraignment, Farler pled not guilty to all the indicted charges and specifications. Thereafter, Farler filed a motion to suppress with three branches. The first branch of the motion moved to suppress all evidence on grounds that the evidence was obtained via an illegal, warrantless search by law enforcement. The second branch of the motion moved to suppress all of Farler's statements to law enforcement based on an alleged *Miranda* violation. The third branch of the motion moved to suppress all evidence based on law enforcement executing allegedly invalid search warrants.

{¶ 4} On October 16, 2024, the trial court held a suppression hearing. At the start of the hearing, Farler's counsel withdrew the first and third branches of the motion to suppress. Accordingly, Farler's counsel proceeded only on the second branch of the motion that concerned the alleged *Miranda* violation. The sole witness to testify during the hearing was Detective David House of the Dayton Police Department. The following is a summary of the testimony and evidence that was presented during the hearing.

*Suppression Hearing Testimony and Evidence*

{¶ 5} On April 14, 2024, Dayton police officers were dispatched to a boarding house on 420 Bowen Street in Dayton, Ohio, in response to a 9-1-1 call that reported a shooting. The shooting victim was Farler's 15-year-old daughter, Kendra Farler. Kendra was shot in the chest and pronounced dead at the scene.

{¶ 6} When House arrived at the scene, the responding officers had already identified three witnesses—Farler, Farler's wife, and Farler's 15-year-old autistic, nonverbal stepson. The officers on scene advised House that the shooting was reportedly an accident caused by the stepson. The witnesses were placed in separate police cruisers so that they could be

3

interviewed. House first went to the police cruiser containing Farler. The police cruiser was equipped with a video camera that recorded Farler's interactions with House and the other responding officers. The video recording was admitted into evidence as State's Exhibit 3.

{¶ 7} The video showed that at 12:46 p.m., Farler entered the backseat of the police cruiser; he was not forced into the cruiser, nor was he handcuffed by the officers. While seated in the backseat of the police cruiser, Farler displayed episodes of emotional distress. Farler asked what was going to happen to his stepson and advised that his stepson was autistic and did not mean to shoot Kendra.

{¶ 8} When he initially entered the police cruiser, Farler asked for a medic because he claimed that he had a heart problem and could not breathe. Shortly thereafter, Farler told an officer that he could breathe, but with difficulty. From that point on, Farler appeared to have no problem breathing.

{¶ 9} Farler also complained about being too hot. To make Farler more comfortable, an officer closed the door to the police cruiser so that the air conditioner would be more effective. Farler later asked an officer why he and his family were "being detained like criminals." In response, the officer told him that they needed to confirm what had happened. House testified that, with the door shut, Farler could not exit the back of the police cruiser without assistance from an officer. Despite this, House testified that Farler was initially free to leave and could have requested an officer to open the door for him if he wanted to exit the police cruiser.

{¶ 10} At 1:07 p.m., House sat in the backseat with Farler and began asking Farler questions without *Mirandizing* him. House testified that he did not *Mirandize* Farler because Farler was not a suspect, but rather a witness to the incident. House began the interview by

4

apologizing to Farler about what had happened to Kendra. House then proceeded to interview Farler as a witness.

{¶ 11} During the interview, Farler advised House that when the shooting occurred, Kendra and his stepson were in a room that belonged to his roommate, Greg Sampson. Farler told House that after he heard the gunshot, he saw Kendra lying on the floor of Sampson's room with blood coming through her shirt. Farler also claimed that he saw his stepson sitting on the bed near one of Sampson's shotguns that was lying on the floor. Farler explained that his stepson did not say anything after the shooting because he is nonverbal. Shortly thereafter, Farler gave House consent to process his room. Because Farler had been continually asking to see his family, once House finished questioning Farler, the officers permitted Farler's six-year-old daughter to sit in the backseat of the police cruiser with him.

{¶ 12} House testified that after he gathered information from Farler, he located Sampson and spoke with him briefly so that he could obtain consent to process his room. House then went to the police cruiser where Farler's wife was located and interviewed her. House testified that Farler's wife initially told him that the shooting had happened in Farler's room but then changed her story and said that the shooting had happened in Sampson's room.

{¶ 13} After speaking with Farler's wife, House spoke with Detective Zach Williams. House testified that Williams had been interviewing Sampson. According to House, Sampson told Williams that the shooting had occurred in Farler's room with Farler's firearm. In light of that information, House went back to the police cruiser containing Farler. House had an officer remove Farler's six-year-old daughter from his lap and immediately asked Farler, "Are you lying to me? Whose room is that?" In response, Farler claimed that he had not lied, but thereafter answered House's question differently and said, "It's our room. It's

5

both of our rooms." Because Farler changed his story, House decided that Farler needed to be questioned further in a more formal setting.

{¶ 14} House arranged for Farler and Farler's wife to be transported to the police department's Safety Building for further questioning. House interviewed the wife first and she confirmed that the firearm in question belonged to Farler and that he was the one who discharged it. House then interviewed Farler. Farler's interview was video recorded and admitted into evidence as State's Exhibit 5.

{¶ 15} The video of Farler's interview showed that House presented Farler with a pre-interview *Miranda* waiver form before questioning him about the shooting. Farler read aloud the first right on the waiver form and House read aloud the remaining rights due to Farler having difficulty with his eyesight. Farler stated that he understood each of his *Miranda* rights and initialed and signed the waiver form. Farler wrote on the waiver form that his education consisted of receiving a GED. The executed waiver form was admitted into evidence as State's Exhibit 4.

{¶ 16} After obtaining Farler's *Miranda* waiver, House interviewed Farler about the shooting incident. The interview lasted approximately 20 minutes. Farler responded appropriately to all of House's questions and did not appear to be under the influence of drugs or alcohol. Farler told House that he had not ingested any drugs that day, but had taken drugs the day before. Thereafter, Farler made incriminating statements pertaining to the shooting and consented to a DNA swab. Farler did not request an attorney at any point during the interview. House and the other officer present, Detective Tyler Hofacker, were not armed during the interview and they did not make any promises or threats to Farler.

{¶ 17} Following the interview, Farler was transported to the Montgomery County Jail. House testified that Farler had advised the booking officers that he had ingested illegal

drugs. As a result, the booking officers took Farler to the hospital. House testified that Farler later admitted to lying about ingesting drugs and was thereafter returned to jail.

*Post-Suppression Hearing Events*

{¶ 18} At the conclusion of the suppression hearing, the trial court admitted State's Exhibits 3, 4, and 5 into evidence and took the matter under advisement. On January 10, 2025, the trial court issued a written decision finding no *Miranda* violation and denying Farler's motion to suppress. Thereafter, Farler pled guilty as charged in the indictment without a plea agreement. The trial court accepted Farler's guilty pleas and then ordered a presentence investigation report ("PSI") for sentencing.

{¶ 19} At Farler's sentencing hearing, the trial court merged the counts for involuntary manslaughter, endangering children, and reckless homicide. The trial court also merged the attendant firearm specifications. The State elected to have Farler sentenced for involuntary manslaughter, for which the trial court imposed an indefinite, minimum term of 11 years to a maximum term of 16.5 years in prison, plus three years in prison for the attendant firearm specification.

{¶ 20} For the 12 counts of having weapons while under disability, the trial court merged the first three counts and their attendant firearm specifications and imposed a 36-month prison term plus three years in prison for the firearm specification. Thereafter, the trial court merged the remaining nine counts of having weapons while under disability and imposed a 36-month prison term for those merged counts as well.

{¶ 21} The trial court ordered consecutive service for all of Farler's prison terms. Accordingly, Farler was sentenced to a total, indefinite minimum term of 23 years to a maximum term of 28.5 years in prison. The trial court did not impose financial sanctions but

did order Farler to pay court costs. Farler now appeals from his convictions, raising three assignments of error for review.

**First Assignment of Error**

{¶ 22} Under his first assignment of error, Farler argues that his guilty pleas are invalid because the trial court failed to personally address him at the plea hearing and failed to determine that he understood the effect of pleading guilty as opposed to no contest. We disagree.

{¶ 23} When reviewing the validity of a defendant's plea, "[a]n appellate court must determine whether the record affirmatively demonstrates that [the] plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2012-Ohio-6051, ¶ 7 (2d Dist.), citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). "If a defendant's plea is not knowing, intelligent, and voluntary, it 'has been obtained in violation of due process and is void.'" *State v. Carter*, 2022-Ohio-206, ¶ 19 (2d Dist.), quoting *Russell* at ¶ 7. "In order for a plea to be given knowingly, [intelligently,] and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2012-Ohio-199, ¶ 13 (2d Dist.). A defendant is generally "not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *State v. Dangler*, 2020-Ohio-2765, ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 24} Pursuant to Crim.R. 11(C), the trial court should not accept a defendant's guilty plea to a felony offense without first addressing the defendant personally and doing all of the following:

(a)     Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for

8

probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a) through (c).

{¶ 25} In this case, Farler first claims that his guilty pleas are invalid because the trial court failed to personally address him at the plea hearing. This claim is belied by the record. The transcript of the plea hearing establishes that the trial court personally addressed Farler while engaging him in a Crim.R. 11 plea colloquy. Accordingly, Farler's claim that the trial court did not personally address him lacks merit.

{¶ 26} Farler also claims that his guilty pleas are invalid because the trial court failed to determine whether he understood the effect of his pleas as required by Crim.R. 11(C)(2)(b). Specifically, Farler argues that the trial court did not sufficiently explain that by pleading guilty he would be giving up his right to challenge the trial court's ruling on his motion to suppress.

9

{¶ 27} "To satisfy the requirement that the court inform the defendant of the effect of the plea pursuant to Crim.R. 11(C)(2)(b), a trial court 'must inform the defendant, either orally or in writing, of the language in Crim.R. 11(B), which defines "effect of guilty plea" as "a complete admission of the defendant's guilt."'" *State v. Harrison,* 2025-Ohio-2705, ¶ 9 (2d Dist.), quoting *State v. Evans*, 2022-Ohio-2890, ¶ 9 (2d Dist.), quoting *State v. Portis*, 2014-Ohio-3641, ¶ 11 (2d Dist.). "Crim.R. 11(C)(2)(b) does not require the trial court to inform a criminal defendant that a guilty plea will forfeit his ability to assign as error any claimed error in pretrial rulings." *Id*., citing *State v. Satterwhite*, 2009-Ohio-6593, ¶ 47 (2d Dist.). More specifically, "Crim.R. 11(C)(2)(b) 'does not require the trial court to conduct [a] specific inquiry into the defendant's understanding of the effect of a guilty plea on the appealability of adverse pre-trial rulings, where a defendant's misunderstanding of that effect is not apparent from the record.'" (Bracketed text in original.) *Portis* at ¶ 10, quoting *Satterwhite* at ¶ 48. Therefore, "'[p]rior to accepting a guilty plea, a trial court need not inform a defendant that he is waiving the right to appeal the overruling of a motion to suppress.'" (Emphasis deleted.) *State v. Richardson*, 2023-Ohio-4718, ¶ 22 (7th Dist.), quoting *State v. Hackathorn*, 2022-Ohio-1612, ¶ 17 (7th Dist.)*,* citing *State v. Jones*, 2006-Ohio-4284, ¶ 8 (1st Dist.).

{¶ 28} During its Crim.R. 11 plea colloquy, the trial court advised Farler that a guilty plea was a complete admission of guilt. Although not required, the trial court also advised Farler that a guilty plea would give up his right to appeal pretrial rulings. Farler concedes that the trial court gave these advisements at the plea hearing. The transcript of the plea hearing also establishes that Farler understood the advisements. Plea Hearing Tr. (Apr. 29, 2025), 58-59. Therefore, contrary to Farler's claim otherwise, the trial court complied with Crim.R. 11(C)(2)(b)'s effect-of-plea requirement. Because the trial court satisfied that

requirement and the other requirements under Crim.R. 11(C), Farler's guilty pleas were knowingly, intelligently, and voluntarily entered and are, therefore, valid.

{¶ 29} Farler's first assignment of error is overruled.

## Second Assignment of Error

{¶ 30} Under his second assignment of error, Farler contends that his trial counsel provided ineffective assistance by (1) withdrawing the two branches of his motion to suppress that raised illegal search and seizure arguments, and (2) failing to advise him to plead no contest as opposed to guilty so that he could challenge the trial court's ruling on his motion to suppress.

### *Standard of Review*

{¶ 31} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which has been adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136 (1989). Under those cases, in order to prevail on an ineffective assistance claim, Farler must show that his trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at 687; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 687.

{¶ 32} To establish deficient performance, Farler must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id*. at 688. When evaluating counsel's performance, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

11

{¶ 33} To establish prejudice, Farler must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley* at 142, quoting *Strickland* at 694.

*Withdrawing Two Branches of Motion to Suppress*

{¶ 34} Farler first contends that his trial counsel provided ineffective assistance by withdrawing the two branches of his motion to suppress that raised illegal search and seizure arguments. We note that "[t]he withdrawal of a motion to suppress does not constitute per se ineffective assistance of counsel." *State v. Kelly*, 2024-Ohio-1612, ¶ 75 (2d Dist.), citing *State v. Caldwell*, 2015-Ohio-2551, ¶ 43 (2d Dist.). "'Instead, the decision to withdraw a motion to suppress "constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful."'" *Id.*, quoting *Caldwell* at ¶ 44, quoting *State v. Stringer*, 2013-Ohio-988, ¶ 14 (12th Dist.).

{¶ 35} In this case, the first branch of Farler's motion to suppress argued for the suppression of all evidence on grounds that the evidence was obtained via an illegal, warrantless search by law enforcement. The third branch of Farler's motion argued for the suppression of all evidence on grounds that executed search warrants were invalid because they lacked probable cause and were based on false statements. We note that Farler provided no factual allegations in his motion to suppress; instead, he simply recited the law without any supporting facts or analysis.

{¶ 36} Because Farler's counsel withdrew the first and third branches of the motion to suppress at the beginning of the suppression hearing, the record is undeveloped as to the arguments and evidence supporting those branches. The only relevant information

12

presented at the suppression hearing was that Farler and Sampson had given House consent to process their rooms. This information does not support Farler's illegal search argument and Farler failed to address the issue of consent in his motion to suppress. Also, the allegedly invalid search warrants that were executed by law enforcement were not presented into evidence during the suppression hearing. Furthermore, Farler's motion did not explain what the warrants were for or what portions of the warrants were inadequate. Given the evidence of Farler's consent and the lack of information about the search warrants, we can, at best, only speculate as to the success of the withdrawn arguments had they been pursued by counsel. "It is well established that mere speculation cannot support either the deficient performance or prejudice requirement of an ineffective-assistance claim." *State v. Morgan*, 2018-Ohio-3198, ¶ 16 (2d Dist.), citing *State v. Short*, 2011-Ohio-3641, ¶ 119 and *State v. Perez*, 2009-Ohio-6179, ¶ 217.

**{¶ 37}** As a further matter, Farler's trial counsel may have chosen to withdraw the first and third branches of the motion because he thought they had little merit and did not want to distract from the stronger *Miranda* argument. Doing so would have been a strategic and tactical decision by counsel. *See generally Caldwell,* 2015-Ohio-2551, at ¶ 44 (2d Dist.); *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). It is well established that "[d]ebatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525 (1992). Therefore, "[a] defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible tactic." *State v. Fields*, 2020-Ohio-5538, ¶ 14 (2d Dist.), citing *State v. Brown*, 38 Ohio St.3d 305, 319 (1988).

{¶ 38} For the foregoing reasons, Farler's claim that his trial counsel was ineffective for withdrawing the first and third branches of his motion to suppress lacks merit.

*Failing to Advise of Option to Plead No Contest*

{¶ 39} Farler next contends that his trial counsel provided ineffective assistance by failing to advise him to plead no contest as opposed to guilty so that he could challenge the trial court's ruling on his motion to suppress. We find this argument to be unpersuasive.

{¶ 40} "A claim of ineffective assistance of counsel cannot be raised on direct appeal if it relies on evidence outside the record." *State v. Bowen*, 2025-Ohio-2610, ¶ 35 (2d Dist.), citing *State v. Stanford*, 2023-Ohio-1515, ¶ 36 (2d Dist.). One "cannot demonstrate ineffective assistance where the record is silent regarding what his attorney explained or what advice his attorney provided prior to the guilty plea." *State v. Brooks*, 2025-Ohio-3292, ¶ 11 (2d Dist.), citing *State v. West*, 2022-Ohio-1611, ¶ 11 (2d Dist.). Therefore, "off-the-record events or conversations will not support an ineffective-assistance claim on direct appeal." *State v. Bakos*, 2025-Ohio-1272, ¶ 11 (2d Dist.), citing *State v. King*, 2024-Ohio-4705, ¶ 10 (2d Dist.); *accord State v. Brown*, 2025-Ohio-4874, ¶ 9 (2d Dist.).

{¶ 41} In this case, any discussion Farler had with his trial counsel about how to plead occurred off the record. Because the deficient representation Farler alleges depends on information outside of the record, his ineffective-assistance claim cannot be raised on direct appeal. Accordingly, Farler's claim that his counsel provided ineffective assistance by failing to advise him to plead no contest is not well taken.

{¶ 42} Farler's second assignment of error is overruled.

**Third Assignment of Error**

{¶ 43} Under his third assignment of error, Farler contends that the trial court erred by imposing consecutive sentences. Although Farler concedes that the trial court made the

14

required statutory findings to impose consecutive sentences, he claims that those findings are not clearly and convincingly supported by the record. We disagree.

*Standard of Review*

**{¶ 44}** In reviewing felony sentences, this court must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1, 7. "Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes (including R.C. 2929.14(C)(4), which addresses consecutive sentences); or (2) the sentence is otherwise contrary to law." *State v. Wells*, 2024-Ohio-4813, ¶ 45 (2d Dist.), citing *Marcum* at ¶ 9 and R.C. 2953.08(G)(2).

*Consecutive Sentencing*

**{¶ 45}** "Ohio law presumes that a defendant convicted of multiple crimes will serve his sentences concurrently." *State v. Glover*, 2024-Ohio-5195, ¶ 38, citing R.C. 2929.41(A). However, "trial courts may impose consecutive sentences when a law specifically permits them to do so." *State v. Barber*, 2025-Ohio-5061, ¶ 51 (2d Dist.), citing *Glover* at ¶ 38. One law that permits the imposition of consecutive sentences is R.C. 2929.14(C)(4). *Glover* at ¶ 38.

**{¶ 46}** R.C. 2929.14(C)(4) permits consecutive sentences if the trial court finds that (1) consecutive service is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one or more of the following three findings is made:

15

(a)     The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)     At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 47} To impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, syllabus. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*. at ¶ 29.

{¶ 48} Under R.C. 2953.08(G)(2), "where a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the

16

record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, ¶ 38 (2d Dist.). This is a deferential standard of review that prohibits an appellate court from simply substituting its judgment for that of the trial court. *State v. Gwynne*, 2023-Ohio-3851, ¶ 15.

*Analysis*

**{¶ 49}** In this case, Farler does not dispute that the trial court made all the required consecutive-sentence findings at the sentencing hearing and incorporated those findings into the sentencing entry. Indeed, the trial court made the first two consecutive-sentence findings required by R.C. 2929.14(C)(4) and the finding under section (c) of the statute, i.e., that Farler's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him. Sentencing Tr. (May 14, 2025), 83; Dkt. No. 73.

**{¶ 50}** Upon review, we do not clearly and convincingly find that the record fails to support the trial court's consecutive-sentence findings. The PSI established that Farler has a significant criminal history that consists of several misdemeanor and felony convictions over the past 20 years. A vast majority of Farler's offenses involve drugs and theft; however, his most recent conviction was for misdemeanor assault in May 2024. His most recent felony conviction was in March 2024, for possession of cocaine and trafficking cocaine. The record also established that Farler was on parole at the time he shot his daughter and that he was in possession of several firearms despite such conduct being in violation of his parole. In addition, the record established that Farler initially lied to the police about what had happened during the shooting and that he attempted to blame the shooting on his 15-year-old autistic, nonverbal stepson. Farler also lied about ingesting drugs when he was getting booked into jail. Therefore, Farler not only has a history of making poor choices that are

17

harmful to his family and the public at large, but he has also shown a pattern of deceptive behavior. Based on the foregoing information, we cannot say that the record clearly and convincingly fails to support the trial court's consecutive-sentence findings.

{¶ 51} Farler's third assignment of error is overruled.

## Fourth Assignment of Error

{¶ 52} Under his fourth assignment of error, Farler contends that the trial court erred by failing to consider his present and future ability to pay financial sanctions that were imposed at sentencing. This argument lacks merit because the record indicates that the trial court ordered Farler to pay court costs, not financial sanctions.

{¶ 53} "Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5). "'Financial sanctions include, for example, restitution, fines, and reimbursement of the costs of community control sanctions, confinement, or monitoring devices.'" *State v. Hart*, 2022-Ohio-4550, ¶ 135 (2d Dist.), quoting *State v. Lux*, 2012-Ohio-112, ¶ 44 (2d Dist.), citing R.C. 2929.18.

{¶ 54} In contrast, "'[c]ourt costs are governed by R.C. 2947.23'" and they "'are not financial sanctions.'" *Id.*, quoting *Lux* at ¶ 45, citing *State v. Smith,* 2007-Ohio-6552, ¶ 11 (3d Dist.). "'Consequently, R.C. 2929.19 is inapplicable to court costs, and the trial court need not consider a defendant's ability to pay under R.C. 2929.19 prior to imposing court costs.'" *Id.*, quoting *Lux* at ¶ 45, citing *Columbus v. Kiner*, 2011-Ohio-6462 (10th Dist.); *accord State v. Fuller*, 2013-Ohio-3274, ¶ 19 (2d Dist.). Therefore, because the trial court imposed court costs, not financial sanctions, the court was not required to consider Farler's present and future ability to pay.

{¶ 55} Farler's fourth assignment of error is overruled.

## Conclusion

{¶ 56} Having overruled all four of Farler's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.